### MILLER v. ALLEN et al.

No. 12297—Opinion Filed May 13, 1924.

Rehearing Denied Nov. 12, 1924.

**Indians—Status of Allottees—Conclusiveness of Enrollment Records.**

The Commission to the Five Civilized Tribes, created and empowered by the various acts of Congress to compile the rolls of citizens of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Indians of the Indian Territory, now a part of Oklahoma, was given by the said acts of Congress quasi judicial authority, not only to determine the right of enrollment, but the source of that right, and whether or not that right existed as a citizen by blood, by adoption, or a freedman citizen of the tribe; and this determination is conclusive. The subsequent acts of Congress dealing with the rights of such citizens, growing out of their enrollment and allotment of land, must be construed in the light of the final adjudications of enrollment, as shown by the enrollment records, and where a person enrolled as a citizen of the Creek Nation, and as a freedman citizen thereof, and not a citizen by blood, this is a final determination of the source of the right to enrollment, and parol evidence is inadmissible to change or alter the status of such citizen as a freedman member of the tribe, in so far as the properties coming to the citizen by reason of such enrollment are concerned.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Annie Miller against Lizzie Allen et al. Judgment for defendants, and plaintiff appeals. Affirmed.

Cheatham & Beaver and J. D. Johnston, for plaintiff in error.

W. P. Z. German, W. V. Pryor, James A. Veasey, C. M. Oakes, and Geo. S. Ramsey, for defendants in error.

Opinion by THREADGILL, C. This is an appeal from a judgment of the district court of Creek county in favor of the defendants and the plaintiff brings the cause here by petition in error and case-made for review.

The plaintiff was a citizen of the Creek Nation of Indians enrolled as a Creek freedman, and as such had allotted and patented to her as a part of her surplus allotment the S.W. ¼ of S.E ¼ of section 32, T. 16 N., R. 10 E., in Creek county, which she sold and conveyed by warranty deed to Good Land Company on June 10, 1905, and by other mesne conveyances the title to the same became vested in the defendants. The plaintiff alleged in her petition that she was three-fourths Creek Indian and contended in the trial of the case that the deed to the Good Land Company and all instruments based thereon were void because she was a three-fourths blood restricted Indian. The defendants denied this and claimed that her action for the possession of the property and cancellation of the conveyances was barred by the statute of limitation.

There is but one question involved in the determination of this case and that is whether or not the enrollment record of the Five Civilized Tribes is conclusive as to plaintiff's descent and race as negro or Indian.

The court allowed oral testimony as well as enrollment record to be introduced in the trial of the case and upon request of the plaintiff made a finding of facts which was as follows:

"I will make this finding, gentlemen, that the plaintiff in this case, Annie Miller, is the daughter of James Miller, a full-blood citizen of the Creek Nation and Cilla Miller born to the said Cilla Miller, while she and the said James Miller were living together as husband and wife, that the said Cilla Miller was the daughter of Nick Marshall, a big Indian, and Beckie, a slave of the Creek Nation, and a person of African blood."

"I shall hold in this case, Gentlemen, that the enrollment by the Dawes Commission of the plaintiff in this case, Annie Miller, upon the Creek freedman roll, was an adjudication of the fact that the said Annie Miller was not possessed of Indian blood. I believe that is all that is necessary to hold in this case. That eliminates the question of statute of limitation. The motion of the defendants for judgment is sustained."

The plaintiff excepted to this holding of the court and judgment based thereon and contends since the conveyance transaction took place before the Act of May 27, 1908, that the enrollment record was not competent and conclusive evidence as to the Indian blood status of the plaintiff, and she had the right to prove her blood status by oral testimony, citing the following cases as authority for this contention: Bucher v. Showalter, 44 Okla. 690, 145 Pac. 1143; Jackson v. Lair, 48 Okla. 269, 150 Pac. 162; Grayson et al. v. Durant et al., 43 Okla. 799, 144 Pac. 592; Scott v. Brakel et al., 43 Okla. 655, 143 Pac. 510; Phillip et al. v. Byrd, 43 Okla. 556, 143 Pac. 684; Smith v. Bell, 44 Okla. 370, 144 Pac. 1058; Miller v. Thompson, 65 Okla. 86, 163 Pac. 528.

The question involved in these cases was the age of the allottee and the court held that prior to the Act of Congress of May 27, 1908, the enrollment record was not conclusive as to age and oral testimony was competent, but the contention of plaintiff that the same argument applies to the citizenship or blood is not well taken for the reason that when Congress created the commission to enroll the members of the Five Civilized Tribes, this commission was given judicial power to determine the blood of the various members, as members by blood, fixing the degree, or by intermarriage, or as freedmen, and enrolling them accordingly. The matter of age was not included in the authority given but was only incidental to it. The act creating this commission is known as the Indian Appropriation Act of June 10, 1896, 29 Stat. L. 339, which provides as follows:

"That said commission is further authorized and directed to proceed at once to hear and determine the application of all persons who may apply to them for citizenship in any of said nations, and after such hearing they shall determine the right of such applicant to be so admitted and enrolled: Provided, however, That such application shall be made to such commissioners within three months after the passage of this Act. The said commission shall decide all such applications within ninety days after the same shall be made. That in determining all such applications said commission shall respect all laws of the several nations or tribes, not inconsistent with the laws of the United States, and all treaties with either of said nations or tribes, and shall give due force and effect to the rolls, usages, and customs of each of said nations or tribes; And Provided, further, That the rolls of citizenship of the several tribes as now existing are hereby confirmed, and any person who shall claim to be entitled to be added to said rolls as a citizen of either of said tribes and whose right thereto has either been denied or not acted upon, or any citizen who may within three months from and after the passage of this act desire such citizenship, may apply to the legally constituted court or committee designated by the several tribes for such citizenship, and such court or committee shall determine such application within thirty days from the date thereof.

"In the performance of such duties said commission shall have power and authority to administer oaths, to issue process for and compel the attendance of witnesses, and to send for persons and papers, and all depositions and affidavits and other evidence in any form whatsoever heretofore taken where the witnesses giving said testimony are dead or now residing beyond the limits of said territory, and to use every fair and reasonable means within their reach for the purpose of determining the rights of persons claiming such citizenship, or to protect any of such nations from fraud or wrong, and the rolls so prepared by them shall be hereafter held and considered to be the true and correct rolls of persons entitled to the rights of citizenship in said several tribes: Provided, That if the tribe, or any person, be aggrieved with the decision of the tribal authorities or the commission provided for in this act, it or he may appeal from such decision to the United States District Court: Provided, however, that the appeal shall be taken within sixty days, and the judgment of the court shall be final.

"That the said commission, after the expiration of six months, shall cause a complete roll of citizenship of each of said nations to be made up from their records, and add thereto the names of citizens whose rights may be conferred under this act, and said rolls shall be, and are hereby, made rolls of citizenship of said nations or tribes, subject, however, to the determination of the United States courts, as provided herein.

"The Commission is hereby required to file the lists of members as they finally approve them with the Commissioner of Indian Affairs to remain there for use as the final judgment of the duly constituted authorities. And said commission shall also make a roll of freedmen entitled to citizenship in said tribes and shall include their names in the list of members to be filed with the Commissioner of Indian Affairs."

In the case of Nunn v. Hazelrigg, 216 Fed. 330, the Circuit Court of Appeals of the 8th Circuit, in construing this act, had under consideration the very point in question in the instant case, and Judge Smith, speaking for the court, uses the following language:

"Out of the condition of slavery and subsequent action in relation thereto arose a considerable class of so-called Creek Freedmen who were entitled to share in the allotment of Creek lands.

"The Dawes Commission thus created and existing was a quasi judicial body. Kimberlin v. Commission of Five Civilized Tribes, 104 Fed. 653, 44 C. C. A. 109. It was expressly required to make separate rolls of the Indians and freedmen. To be enrolled as a Creek Indian, it was not sufficient for an applicant to show that he was an Indian, but he must show, and the commission must find, that he was an Indian of the Creek Tribe; and to be enrolled as a freedman it was not sufficient to show that he was an African, but he must show, and the commission must find, that he was a former slave or descendent of a former slave of some member of the Creek Tribe, or at least a slave of some other person adopted by the Creek Nation. It was therefore necessary for an applicant for enrollment to show upon what grounds he was entitled to such enrollment; that he was of Creek Indian blood; that he was a Creek freedman, became a citizen of the tribe by the treaty of June 14, 1866; or that he had without any such rights become a member of the tribe by adoption. And, when the commission found by any one of these methods a person was entitled to enrollment, the manner in which he was found to be entitled to such enrollment was adjudicated as much as the mere fact of the right of enrollment."

The court found that the allottee descended from a slave mother and this fixed her status and entitled her to enrollment as a Creek freedman as defined by Act of Congress of April 26, 1906, 34 Stat. L. 137.

An examination of various acts of Congress and treaties with the various tribes of Indians reveals the fact that the Indians of the Five Civilized Tribes and the Congress treating with them understood and treated freedmen as persons not of Indian blood. In the Creek Nation no one was eligible to the freedman roll except those enrolled on the Dunn roll, or the descendants of those on the Dunn roll, and persons of African descent admitted to citizenship by tribal authorities. This very question was before the Supreme Court of the United States in Alberty v. United States, 162 U. S. 499, 40 L. Ed. 1051.

The jurisdiction of the court was challenged on the ground that the defendant was a Cherokee Indian. He was being tried for murder. The evidence showed that he was an illegitimate son of a Choctaw Indian by a negro woman who was a slave in the Cherokee nation. The court said:

"As his mother was a negro slave, under the rule of partus sequitur ventrem, he must be treated as a negro by birth and not as a Choctaw Indian."

This reasoning is applicable to the instant case. Cilla Miller, the mother of plaintiff,

was enrolled as a freedman and her mother, was a slave. If slavery were in force at this time, Annie Miller, the plaintiff, would be a slave. One drop of slave blood taints the stream and makes it African in its descent. 36 Cyc. 468; Jane v. Prater's Administrator, 59 Ky. 453; Daniel v. Guy, 19 Ark. 121; McMillan v. School District, 10 L. R. A. 823; Inhabitants of Andover v. Inhabitants of Canton, 13 Mass. 548.

The case of United States v. Wildcat, 244 U. S. 111, holds that the finding and decision of the Dawes Commission under Act of June 10, 1896, 29 Stat. L. 339, when approved by the Secretary of the Interior was conclusive and binding on the government where citizenship enrollment is involved.

United States v. Atkins, 268 Fed. 923, is to the same effect.

In the case of Malone v. Alerdice, 212 Fed. 668, Judge Sanborn, speaking for the court, uses the following language:

"The Commission to the Five Civilized Tribes which made the enrollment of their citizens and freedmen was a quasi-judicial tribunal empowered to determine who should be enrolled and what lands should be allotted and in what way it should be allotted to every citizen and freedman, and its adjudication of these questions and on every issue of law and fact that it was necessary for it to determine in order to decide these questions is conclusive and impervious to collateral attack. But its determination, recital, or report regarding issues not material to its answers to the questions who should be enrolled and what lands should be allotted to them and how, is in the absence of special legislation such as the Act of May 27, 1908, without judicial or other conclusive effect. Kimberlin v. Commission to Five Civilized Tribes, 104 Fed. 653, 44 C. C. A. 109, 118."

The holding of the courts that prior to the Act of May 27, 1908, the enrollment record was not conclusive as to age has no application in determining the blood of the allottee. When the allottee was enrolled as an Indian by blood this fixed his status for all time, and when the allottee was enrolled as a freedman this fixed his status for all time, and it would be as reasonable to permit extraneous evidence in an issue of the blood status of the allottee to show that he is not Indian by blood as to permit extraneous evidence to show that the freedman is not a freedman but an Indian by blood. Nunn v. Hazelrigg, 216 Fed. 230.

We must, therefore, conclude that Annie Miller, the plaintiff in error, was enrolled as a freedman and the Act of April 21, 1904, c. 1402, 33 Stat. L. 204, removed all restriction

from the lands involved in this case. Blakemore v. Johnson, 24 Okla. 544, 103 Pac. 554.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.