## ROWE v. SARTAIN et al.

No. 13211—Opinion Filed Sept. 23, 1924.

Rehearing Denied Dec. 2, 1924.

Second Rehearing Denied Dec. 16, 1924.

(Syllabus.)

1. Indians — Enrollment by Commission to Five Civilized Tribes — Finality of Decisions.

The Commission to the Five Civilized Tribes was a quasi judicial tribunal empowered to determine who should be enrolled as citizens and freedmen of those tribes. It was necessary for such commission to determine whether an applicant was entitled to enrollment as an Indian or a freedman, and its adjudication of this question and every issue of law and fact necessary to its determination is conclusive and impervious to collateral attack.

2. Same — Allotment of Creek Freedman—Removal of Restrictions—"Not of Indian Blood."

Where one was by the Commission to the Five Civilized Tribes duly enrolled on the final rolls of the Creek Nation as a Creek freedman, the adjudication by such commission that she was a freedman fixed her status as such, and so far as her allotted lands are concerned, she must be deemed to be not of Indian blood. and the restrictions upon the alienation of her allotted lands were removed by the Act of Congress approved April 21, 1904 (33 Stat. at L. 189).

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Hattie Rowe against Robert L. Sartain and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Stuart, Sharpe & Cruce and A. L. Emery, for plaintiff in error.

Wellington L. Merwine, for Robert L. Sartain.

J. B. Hill, John R. Ramsey, B. W. Griffith and Sol Kauffman, for Texas Company.

C. E. Mead, E. T. Noble. and S. L. O'Bannon for Waite Phillips.

V. H. Biddison and Biddison & Ladner, for Pensy Oil & Gas Co.

John Y. Murry. for Exchange National Bank.

NICHOLSON, J., This action was brought by Hattie Rowe. as plaintiff, against Robert L. Sartain, S. H. Criswell, Jack Summers, W. S. Fears, Coit C. Almy, Waite Phillips, H. B. Deardorf. Exchange National Bank of Tulsa. Pensy Oil Company, a corporation, the Texas Company, a corporation, the Texas Pipe Line Company, a corporation. Twin Hill Oil & Gas Company, a corporation, and Lee Oil Company, a corporation, as defendants, to recover the possession of and quiet title to 120 acres of land situated in Okmulgee county, and to recover the rents and profits therefrom. A trial resulted in a judgment in favor of the defendants, from which plaintiff has appealed.

The plaintiff was duly enrolled on the final rolls of the Creek Nation as a Creek freedman, and the lands involved were allotted to her as such, and comprise her allotted land exclusive of a 40-acre homestead. On the 29th day of June, 1904, she conveyed 80 acres of said land to the defendant W. S. Fears by warranty deed, and on the 26th day of August, 1904, she executed and delivered to the defendant S. H. Criswell a warranty deed conveying the entire 120 acres to him. She now attacks these deeds as void. insisting that the land was inalienable at the time of their execution, and bases this claim upon the fact that she was of Indian blood, and that the Act of Congress approved April 21, 1904 (33 Stat. at L. 189), which provides that: "All the restriction upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are except as to homestead, hereby removed, * * *" did not operate to remove the restrictions upon the alienation of her allotted lands.

It appears that the plaintiff is of mixed Indian and negro blood, the evidence indicating that she possesses seven-eighths Indian and one-eight negro blood; that on May 8, 1901, she appeared before the Commission to the Five Civilized Tribes, and on May 16, 1901. was by said commission admitted to citizenship as a Creek freedman, and was enrolled as such. It is her theory that prior to the passage of the Acts of Congress approved April 26, 1906 (34 Stat. at L. 137). and May 27. 1908 (35 Stat. at L. 312), the final rolls of members of the Five Civilized Tribes were not conclusive of the blood of any enrolled Indian or freedman. and the Act of Congress approved April 21. 1904, did not remove the restrictions upon alienation of an allottee who possessed Indian blood, even though such allottee was enrolled as a freedman, and that, as she established on the trial that she was of Indian blood, the conveyances executed by her were void.

There was no legislation by Congress prior to the passage of the Act of Congress approved April 26, 1906, in terms making the rolls conclusive as to the quantum of Indian blood possessed by any member of the tribes, hence it becomes necessary to determine the effect of the action of the Commission to the Five Civilized Tribes in placing the plaintiff upon the rolls as a freedman, and in doing this it is essential that we review briefly the various acts of Congress pertaining to such commission and to **Indians affairs.**

By the Act of Congress approved March 3, 1893, sec. 16 (27 Stat. at L. 645), a commission composed of three members to be appointed by the President was created with power and authority, under such regulations and directions as should be prescribed by the President, through the Secretary of the Interior.' to enter upon negotiations with the several nations or tribes of Indians in the Indian Territory. looking to the extinguishment of the tribal title to the lands of the Five Civilized Tribes in the Indian Territory and the allotment of such lands in severalty **to the Indians** belonging to each of said tribes, as might be agreed upon as just and **proper, to** provide for each member of the tribes a sufficient quantity of land for his or her needs, in such equal distribution and apportionment as might be found just and suitable to the circumstances. For the purpose of such equal distribution thereof, the commissioners were by said act authorized and directed to cause the lands of such tribes to be surveyed and proper allotment to be designated, and to procure the cession to the United States for such price and upon such terms as should be agreed upon, any lands not found necessary to be allotted, and to make proper agreements for the investment or holdings by the United States of such moneys as might be paid or agreed to be paid to such nations or tribes, **or to any of the Indians** thereof for the extinguishment of their interest therein, and said commissioners were granted the power to negotiate any and all such agreements as, in view of all the circumstances affecting the subject. should be found requisite and suitable to such arrangement of the rights, interests, and affairs of such nations or tribes of Indians, or any of them, to enable the ultimate creation of a

territory of the United States with a view to the admission of the same as a state in the Union. This commission was known as the "Commission to the Five Civilized Tribes," or "Dawes Commission," and the membership thereof was by the Act of Congress approved March 2, 1895 (28 Stat. at L. 939), increased to five.

By the Act of Congress approved June 10, 1896 (29 Stat. at L. 339), said commission was further authorized to proceed at once to hear and determine the application of all persons who might apply for citizenship in any of the said nations, and after such hearing, such commission should determine the right of such applicant to be so admitted and enrolled and in doing so said commission was required to respect all laws of the several nations or tribes not inconsistent with the laws of the United States, and all treaties with either of said nations or tribes, and should give due force and effect to the rolls, usages, and customs of each of said nations or tribes; and by said act it was provided that the rolls of citizenship of the several tribes as then existing were thereby confirmed, and any person who should claim to be entitled to be added to said rolls as a citizen of either of said tribes and whose right thereto had either been denied or not acted upon, or any citizen who might within three months from the passage of said act desire such citizenship, might apply to the legally constituted court or committee designated by the several tribes for such citizenship, and such court or committee should determine such application within 30 days from the date thereof.

In the performance of the duties imposed, said commissioners were granted power to administer oaths, to issue process and compel the attendance of witnesses, and to send for persons and papers, and all depositions and affidavits and other evidence in any form whatsoever theretofore taken where the witnesses, giving such testimony were dead or resided beyond the limits of said territory, and to use every fair and reasonable means within their reach for the purpose of determining the rights of persons claiming such citizenship, or to protect any of said nations from fraud or wrong, and the rolls so prepared by said commission should thereafter be held and considered to be the true and correct rolls of persons entitled to the rights of citizenship in said several tribes, and it was provided that if the tribe or any person was aggrieved with the decision of the tribal authorities or the commission, such tribe or person might appeal from such decision

to the United States court; that such appeal should be taken within 60 days, and the judgment of the court should be final. The commission after the expiration of six months was required to cause a complete roll of the citizenship of each of said nations or tribes to be made up from their record and add thereto the names of citizens whose right might be conferred under the act, and said rolls were by said act made rolls of citizenship of said nations or tribes, subject, however, to the determination of the United States court as provided therein. The commission was required to file the list of members of the several tribes as finally approved by them with the Commissioner of Indian Affairs, to remain there for the use as the final judgment of the duly constituted authorities, and was also required to make a roll of freedmen entitled to citizenship in said tribes and to include their names in the list of members to be filed with the Commissioner of Indian Affairs. By the Act of Congress approved June 7, 1897 (30 Stat. at L. 83), it was provided that said commission should continue to exercise all authority theretofore conferred on it by law to negotiate with the Five Civilized Tribes, and any agreement made by it with any of said tribes, when ratified, should operate to suspend any provisions of said act if in conflict therewith, as to said nation, and it was further provided that the words "rolls of citizenship" as used in the act of June 10, 1896, should be construed to mean the last authenticated rolls of each nation or tribe which had been approved by the council thereof and the descendants of those appearing on such rolls and such additional names and their descendants as had been subsequently added, thereto either by the council of such nation or the duly authorized court thereof or the commission under authority of the act of Congress of June 10, 1896, and all other names appearing upon such rolls should be open to investigation by such commission for a period of six months after the passage of said act, and all names appearing on such rolls and not confirmed by the Act of June 10, 1896, might be stricken from the rolls by the commission where the party affected should have ten days' previous notice that such commission would investigate and determine the right of such party to remain upon the rolls as a citizen of such nation. But the one whose name was stricken was granted the right of appeal as provided in the Act of June 10, 1896.

By the provisions of section 21 of the Act of Congress approved June 28, 1898

known as the Curtis Act (30 Stat. at L. 495), the rolls of Creek Freedmen made by J. W. Dunn, under the authority of the United States prior to March 14, 1867, was confirmed, and said commission was directed to enroll all persons then living whose names were found on said rolls and all descendants born since the date of said rolls to persons whose names were found thereon, with such other persons of African descent as might have been originally admitted by the lawful authorities of the Creek Nation.

The commission was required to make the rolls of each of the Five Civilized Tribes descriptive of the person thereon, so that they might be identified, and was authorized to take a census of each of said tribes, or to adopt any other means by the commissioners deemed necessary to enable them to make such rolls, and they should have access to any rolls and records of the several tribes, and the United States Court in the Indian Territory was granted jurisdiction to compel the officers of the tribal government and custodians of such rolls and records to deliver the same to said commissioners and to punish for contempt their failure so to do; and also to require any citizen of said tribes and persons who should be so enrolled to appear before said commissioners for enrollment at such times and places as might be fixed by the commissioners, and to enforce obedience of all others concerned so far as the same might be necessary to enable the commissioners to make rolls as by the act required, and to punish any one who might in any manner or by any means obstruct said work. The rolls so made, when approved by the Secretary of the Interior, were made final, and the persons whose names were found thereon, with their descendants thereafter born to them, with such persons as might intermarry, according to tribal laws, should alone constitute the several tribes which they represented. The members of said commission in performing all duties required of them by law had authority to administer oaths, examine witnesses, and send for persons and papers, and any person who willfully and knowingly made false affidavit or oath to any material fact or matter before any member of said commission or before any officer authorized to administer oaths to any affidavit or other paper to be filed or oath taken before said commissioners should be deemed guilty of perjury, and on conviction thereof should be punished for said offense.

Section 11 of this act provided that when the rolls were fully completed as provided

by law and the survey of the lands of the nations or tribes was also completed, the commission should proceed to allot the lands among the citizens thereof as shown by the rolls, giving to each, so far as possible, his fair and equal share thereof, and make report thereof to the Secretary of the Interior.

By the Act of Congress approved March 3, 1901, the rolls made by the commission, when approved by the Secretary of the Interior, were made final, and the persons whose names appeared thereon should alone constitute the several tribes which they represented.

In accordance with the power conferred by the foregoing acts of Congress, the Commission to the Five Civilized Tribes negotiated an agreement with the Creek Tribe of Indians known as the "Original Creek Treaty," approved March 1, 1901, and ratified by the Creek Nation May 25, 1901 (31 Stat. at L. 861) section 28 of which provides, among other things, that no person except as therein provided should be added to the rolls of citizenship of said tribes after the date of said agreement, and no person whosoever should be added to said rolls after the ratification of said agreement, and that the rolls so made by the Commission to the Five Civilized Tribes, when approved by the Secretary of the Interior, should be the final rolls of citizenship of said tribe upon which the allotment of all lands and the distribution of all moneys and other property of the tribe should be made.

Afterward, the Supplemental Creek Treaty was entered into which was approved by the Act of Congress of June 30, 1902 (32 Stat. at L. 500); section 7 thereof providing that any children born to those citizens who were entitled to enrollment by the Act of Congress approved March 1, 1901 (31 Stat. at L. 861), subsequent to July 1, 1900 and up to and including May 21, 1901, and living upon the latter date, should be placed upon the rolls made by said commission. By section 8 of this treaty all children who had not theretofore been listed for enrollment, living on May 21, 1901, born to citizens whose names appeared upon the authenticated rolls of 1890, or upon the authenticated rolls of 1895 and entitled to enrollment as provided by the Act of Congress approved March 1, 1901 (31 Stat. at L. 861), should be placed on the rolls made by said commission. And section 9 of such treaty provided that if the rolls of citizenship provided for by the Act of March 1, 1901, should have been completed by said commission prior to the ratification of such

supplemental treaty, the names of children entitled to enrollment under the provisions of sections 7 and 8 thereof, should be placed upon the supplemental rolls, and when approved by the Secretary of the Interior should in all respects be held to be a part of the final rolls of citizenship of such tribes.

From the foregoing it will be seen that the Commission of the Five Civilized Tribes was created for the purpose of negotiating with the Five Civilized Tribes for the extinguishment of the tribal title to the lands within the Indian Territory, and for the allotment and division of the same in severalty among the members of such tribes, and to this end such commission was granted the power and charged with the duty of enrolling the citizens of the tribes and of allotting the lands of the tribes among the members thereof. Such commission was authorized and directed to make up the rolls of Indian citizens and freedmen, which rolls were required to be descriptive of the persons thereon so that they might be thereby identified, and which rolls were made final when approved by the Secretary of the Interior. In the determination of citizenship of those who applied to them for membership in the tribes, the commissioners were vested with certain judicial powers. They had authority to compel the attendance of witnesses, to send for persons and papers, to administer oaths and hear evidence, to use every fair and reasonable means within their reach for the purpose of determining the rights of persons claiming citizenship in either of the tribes, and they had the power, and it was their duty, to hear and determine the applications of all persons who applied to them for citizenship, and their determination thereof was made the final judgment of the duly constituted authorities.

In the case of Malone v. Alderdice et al., 212 Fed. 668, the Circuit Court of Appeals for the Eighth Circuit held:

"The Commission to the Five Civilized Tribes was a quasi judicial tribunal empowered to determine who should be enrolled as citizens and freedmen of those tribes, what lands should be allotted to each, and in what way, and its adjudication of those questions and of every issue of law and fact it was necessary for it to determine in order to decide them is conclusive and impervious to collateral attack."

To the same effect are: Kimberlin v. Commission to the Five Civilized Tribes, 104 Fed. 653; Nunn v. Hazelrigg, 216 Fed. 330; Folk v. United States et al., 233 Fed. 177; United States v. Atkins et al., 268 Fed. 923; United States v. Wildcat, 244 U. S. 111,

61 L. Ed. 1024; Miller v. Allen et al., 104 Okla. 39, 229 Pac. 152.

In the course of the labors of the commissioners in preparing the rolls of citizenship of the Creek Nation, the plaintiff appeared before them and was enrolled as a Creek freedman. The rolls so describing her were duly approved by the Secretary of the Interior and became final without any complaint on her part. Upon the approval of the Act of Congress of April 21, 1904 (33 Stat. at L. 189), removing all restrictions upon the alienation of lands of all the allottees of either of the Five Civilized Tribes who were not of Indian blood, she conveyed her lands, and she now seeks to avoid these conveyances because she possessed Indian blood. This, she cannot do. The adjudication by the commission to the Five Civilized Tribes fixed her status, and so far as her allotted lands are concerned, she is deemed to be not of Indian blood. This being true, the restrictions upon the alienation of her allotted lands were removed by the Act of Congress approved April 21, 1904. The Commission to the Five Civilized Tribes, being a quasi judicial tribunal empowered to determine her right to enrollment, must of necessity have determined that she was a negro, and its adjudication of this question is conclusive and impervious to collateral attack.

Many assignments of error are presented, but as the case turns upon the question decided, it is unnecesary to consider the other contentions made.

The judgment is affirmed.

All the Justices concur.