## SANGO v. WILLIG.

No. 16678—Opinion Filed July 13, 1926.

Rehearing Denied Sept. 21, 1926.

**1. Indians — Status of Allottee as Creek Freedman.**

Where one was enrolled on the final rolls of the Creek Nation as a freedman, and allotted lands pursuant to such enrollment, his status, as to such allotted lands, was thereby fixed as one not of Indian blood.

**2. Same—Removal of Restrictions on Surplus Allotments.**

All restrictions upon alienation of surplus allotments made to members of the Creek Tribe of Indians enrolled as freedmen, except minors, were removed by the Act of Congress of April 21, 1904.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Emma Sango against William Willig. Judgment for defendant, and plaintiff appeals. Affirmed.

Neff & Neff and W. L. Merwine, for plaintiff in error.

G. R. Horner, for defendant in error.

Opinion by RAY, C. Emma Sango, enrolled as a Creek freedman as No. 4468, seeks by this action to recover her allotment conveyed by her June 24, 1904, to Perry McKay for a consideration of $1,800, and which was, by mesne conveyances, acquired by the defendant, William Willig. As stated in plaintiff's brief, the sole question is whether her deed to McKay is valid. Her claim is that she is of Creek Indian blood, and the restrictions upon the sale of the land were

not removed by the Act of Congress of April 21, 1904, although she was enrolled as a Creek freedman. That act provides:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed." 33 Stat. 204.

The enrollment of the plaintiff, Emma Sango, shows that she was of the tribal enrollment, town of Tulwathlocco, and the daughter of Millie Sango, also of tribal enrollment, town of Tulwathlocco. The enrollment record of Millie Sango shows that she was on the Tulwathlocco roll, and was enrolled as of one-half Creek Indian blood. On this record evidence, that Millie Sango is of Indian blood, it is contended that the Indian blood of her daughter, the plaintiff, is established, and that her Indian blood being established, the restrictions upon the alienation of the land were not removed, as by the language of the act, the restrictions were removed only of such allottees "who are not of Indian blood."

This court has held to the contrary in the following cases: Miller v. Allen, 104 Okla. 39, 229 Pac. 152; Rowe v. Sartain, 107 Okla. 199, 230 Pac. 919; Tiger v. Fewell, 109 Okla. 199, 235 Pac. 224. To the same effect: Nunn v. Hazelrig, 216 Fed. 330, quoted with approval in Miller v. Allen, supra.

Plaintiff in her brief says that the case first cited (Miller v. Allen) "was based upon the proposition that the allottee followed the blood of her mother." And again, "While the three decisions (Miller v. Allen, Rowe v. Sartain, and Tiger v. Fewell,) state that the enrollment as a freedman is a determination that the allottee is not of Indian blood, yet, in each of these cases the question at issue was whether the fact of the allottee having Indian blood could be proven by evidence other than the enrollment record." We do not so understand those opinions. It is true that in Miller v. Allen, after quoting from Alberty v. United States, 162 U. S. 499, 40 L. Ed. 1051, it was said:

"If slavery were in force at this time, Annie Miller, the plaintiff, would be a slave. One drop of slave blood taints the stream and makes it African in its descent."

It was also held in that case that parol evidence was inadmissible to change or alter the status of such citizen as a freedman member of the tribe, in so far as the properties coming to the citizen by reason of such enrollment are concerned. But we think it is made clear by the syllabus that the decision rested upon the proposition that the

finding of the Dawes Commission, as shown by the enrollment record, is conclusive as to property rights. The syllabus reads:

"The Commission to the Five Civilized Tribes, created and empowered by the various acts of Congress to compile the rolls of citizens of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Indians of the Indian Territory, now a part of Oklahoma, was given by the said acts of Congress quasi judicial authority, not only to determine the right of enrollment, but the source of that right, and whether or not that right existed as a citizen by blood, by adoption, or a freedman citizen of the tribe; and this determination is conclusive. The subsequent acts of Congress dealing with the rights of such citizens, growing out of their enrollment and allotment of land, must be construed in the light of the final adjudications of enrollment, as shown by the enrollment records, and where a person enrolled as a citizen of the Creek Nation, and as a freedman citizen thereof, and not a citizen by blood, this is a final determination of the source of the right to enrollment, and parol evidence is inadmissible to change or alter the status of such citizen as a freedman member of the tribe, in so far as the properties coming to the citizen by reason of such enrollment are concerned."

In Rowe v. Sartain the question of evidence was not involved. It is stated in the opinion, as a fact, that the plaintiff, who was of seven-eighths Indian and one-eighth negro blood, was enrolled as a freedman. The only question was whether the finding by the Dawes Commission as to the quantum of blood, as shown by the enrollment of the allottee, was final and conclusive as to property rights to the allotted lands. After pointing out the powers and duties of the Dawes Commission prescribed by these various acts of Congress, it was held:

"Where one was by the Commission to the Five Civilized Tribes duly enrolled on the final rolls of the Creek Nation as a Creek freedman, the adjudication by such commission that she was a freedman fixed her status as such, and so far as her allotted lands are concerned, she must be deemed to be not of Indian blood, and the restrictions upon the alienation of her allotted lands were removed by the Act of Congress approved April 21, 1904 (33 Stat. at L. 189)."

In Tiger v. Fewell the question arose on a general demurrer to plaintiff's petition, which alleged that he was enrolled as a Creek freedman and allotted certain lands; that he was of Indian blood and for that reason the restrictions were not removed. The single question considered, as stated in the opinion, was:

"Was the surplus allotment of plaintiff,

a duly enrolled Creek freedman, restricted against alienation on April 22, 1904, because he was of part Indian blood?"

It was held that the restrictions upon alienation of the allotment were removed by the Act of April 21, 1904.

Language used in the body of the opinion, "that a determination of the right of an applicant to appear on the freedman roll carried with it a determination that such person was not of Indian blood," is pointed out as not a correct statement of the law. The question decided, however, was in respect of property rights as to the allotment of lands made in pursuance of the enrollment, and wholly without reference to other rights or privileges of the allottee.

It is argued that the act removed the restrictions only of those "not of Indian blood," and to hold that restrictions were removed by the act as to all not enrolled as of Indian blood, is to read into the act language not in the act, and that if it had been the purpose of Congress to so legislate it could easily have said so in the act.

It is pointed out in Rowe v. Sartain, supra, that the rolls made by the Commission, when approved by the Secretary of the Interior, became the final rolls upon which the allotment of all lands and the distribution of all monies and other property of the tribe should be made. Pursuant to acts of Congress the Dawes Commission, with full authority to subpoena witnesses and obtain information from any and all sources, made up the rolls of the citizens of the tribe in classes of Indian blood, adopted citizens, intermarried citizens, freedmen. These rolls were made final, upon approval by the Secretary of the Interior, for the purpose of allotment of lands and the distribution of the other property and monies of the tribe. By the allotment of lands, according to the several final rolls, the titles of the allottees to the lands set apart to them in severalty, according to classification fixed by the rolls, were made of record in the office of the Dawes Commission and the Department of the Interior. The enrollment of the citizens in the several classes, and the allotments of lands pursuant thereto, having become final and of record as required by law, Congress saw fit to permit certain classes of allottees to sell their surplus allotments with the same freedom as other citizens of the United States. To that end the Act of April 21, 1904, provided:

"And all restrictions upon the alienation of lands of all allottees * * * who are not

of 'Indian blood * * * are * * * hereby removed."

We think it would require an unreasonable interpretation of the above language to hold that Congress thereby meant to create an additional classification to the several classifications fixed by the final rolls upon which allotments had been made—a classification of enrolled freedmen of Indian blood—whose full title, or right of alienation, should in each instance depend, not upon the record title, but upon proof aliunde the record in each instance. So it was held in Miller v. Allen, supra, that parol evidence was inadmissible to change or alter the status as fixed by the enrollment, in so far as the properties coming to the citizen by reason of such enrollment are concerned.

The contention here is, however, not that the Indian blood of one enrolled and allotted as a freedman may be shown by parol, but that it is established by the enrollment records which show that the mother of such person was enrolled as of Indian blood. We think a complete answer to such contention is that the final judgment, or finding, of the Commission is expressed in the enrollment itself, and not in the recitals of fact of identification, or the enrollment of other persons. But, aside from that, and conceding, as contended, that the enrollment of Emma Sango as a freedman is not conclusive that she did not possess Indian blood, we are unable to see how the record of the enrollment of her mother as of Indian blood, unaided by other proof, could establish the Indian blood of Emma Sango, the two records of enrollment being of equal dignity and verity.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See 31 C. J. p. 514 § 79.