681 F.2d 1144
 Moss J. WITT, an American Citizen of Choctaw Indian Descent,
Plaintiff-Appellant,
v.
The UNITED STATES of America; The Secretary of Interior; The
U. S. Commissioner of Indian Affairs; The Attorney
General of the United States,
Defendants-Appellees.
Jackie Laverne JARMAN, a Cherokee Indian Citizen, Plaintiff-Appellant,
v.
The UNITED STATES of America, Defendant-Appellee.
 Nos. 81-5147, 81-5260.
 United States Court of Appeals,
Ninth Circuit.
 Submitted March 3, 1982.
Decided July 20, 1982.
 
 Moss J. Witt, Jackie L. Jarman, Noble, Okl., for plaintiff-appellant.
 Brian L. Sullivan, Las Vegas, Nev., Laura Frossard, Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before SNEED, POOLE, and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 This consolidated appeal involves entitlement to Indian land allotments under Section Four of the General Allotment Act of 1887 (the Act), 25 U.S.C. § 334. At issue is the requirement of acquiring an eligibility certificate indicating that an ancestor was enrolled by the Dawes Commission. Additionally, we are confronted with the propriety of dismissing a pro se litigant's case for failure to comply with a local rule requirement for filing an answering legal memorandum.
 
 
 2
 * Facts
 
 
 3
 Moss Witt and Jackie Jarman filed claims with the Bureau of Land Management (BLM) on behalf of minor children in their care for Indian land allotments under Section Four of the Act, 25 U.S.C. § 334. Witt claimed to be of Choctaw descent, and Jarman claimed Cherokee descent. The BLM rejected the applications for failure to submit a certificate of eligibility from the Commissioner of Indian Affairs. Jarman's applications were also rejected because the tracts requested had previously been withdrawn from allotment and classified for federal retention, and Jarman had failed to file petitions for reclassification.[1] The Interior Board of Land Appeals (IBLA) upheld the rejection of the applications. See Geneiva Nell Maston Smith, 48 IBLA 199, 201 (1980) (Witt); Robert Dale Marston, 51 IBLA 115 (1980) (Jarman). Both brought actions in the United States District Court for the District of Nevada under 25 U.S.C. § 345 to establish rights to allotments.[2]
 
 
 4
 In Witt's district court action, it was undisputed that he could not qualify for an eligibility certificate. He argued that the eligibility requirements unconstitutionally deprived him of property in violation of the Fifth Amendment, and deprived him of his full rights as a United States citizen conferred by 8 U.S.C. § 1401. Jarman challenged both the requirement of an eligibility certificate and the existence and exercise of the Secretary of the Interior's power to classify land before it becomes available for Indian allotments. He contended that the Secretary had acted illegally by classifying large tracts of public lands, making them unavailable for public disposal, including for Indian land allotments.
 
 
 5
 The district court granted summary judgment against Witt on the grounds that he had not filed for and was ineligible for a certificate. In Jarman's case, the district court dismissed the action pursuant to Nevada District Court Local Rule 16(e) upon failure to file a memorandum of points and authorities in opposition to the Government's Fed.R.Civ.P. 12(b)(6) motion. The two cases were consolidated for appeal. We hold that the eligibility standards are constitutional, and therefore, summary judgment was properly granted against Witt. The dismissal of Jarman's action for failure to file a memorandum of points and authorities was an abuse of discretion, and we remand and instruct that an opportunity to cure the defect be provided.
 
 II
 Background
 
 6
 Under Section Four of the Act, 25 U.S.C. § 334, any Indian not residing on a reservation may apply for and is entitled to allotment of a parcel of public land "not otherwise appropriated."[3] Heads of families may select allotment lands for their minor children. 25 U.S.C. § 332.
 
 
 7
 The original purpose behind the 1887 General Allotment Act was to alter tribal existence and lifestyle by allotting lands in severalty to individuals and family groups. See generally Hopkins v. United States, 414 F.2d at 467; U.S. Dep't of the Interior, Federal Indian Law 773-77 (1958) (hereinafter Federal Indian Law ). Section One of the Act authorized allotment of reservation lands to Indians residing thereon. 25 U.S.C. § 331. Section Four created a similar allotment system in unappropriated public lands for off-reservation Indians.
 
 
 8
 As enacted, the Allotment Act did not extend to the Five Civilized Tribes,[4] including the Cherokee and Choctaw tribes. 25 U.S.C. § 339. Allotment of the lands of these tribes was accomplished by agreements between the United States and the tribes in the late 19th and early 20th centuries. To facilitate negotiation and implementation of those agreements, Congress created the Dawes Commission and directed it to compile rolls of tribal membership.[5] Eligibility for allotment of tribal lands was limited to persons enrolled by the Commission. Although not clearly elucidated by the parties, an issue in this appeal is whether the Dawes Commission enrollments also limit eligibility for the allotments of public land sought by Witt and Jarman.
 
 
 9
 The Act does not define who is an "Indian." Regulations promulgated by the Secretary of the Interior require that an applicant for allotment "show that he is a recognized member of an Indian tribe or is entitled to be so recognized," and that he do so by "obtain(ing) from the Commissioner of Indian Affairs a certificate showing that he or she is an Indian and eligible for such allotment." 43 C.F.R. § 2531.1.[6] A person seeking allotment on behalf of a minor child must also be eligible for allotment. 43 C.F.R. § 2531.1(d). The Commissioner will issue an eligibility certificate to a Cherokee or Choctaw for a public land allotment only if the name of one of the person's ancestors is listed on the Dawes Commission rolls.
 
 III
 Requirement of a Certificate
 
 10
 Witt and Jarman challenge both the requirement of filing an eligibility certificate and the standards used. They contend that the requirement of filing a certificate deprives them of vested property rights and of the rights of national citizenship guaranteed by 8 U.S.C. § 1401. That section, however, is inapplicable to the right, if any, to an Indian land allotment. The statute assures citizenship to Indians born in the United States. Its purpose was to change the earlier rule that an Indian was a citizen only if naturalized. See Elk v. Wilkins, 112 U.S. 94, 103, 5 S.Ct. 41, 46, 28 L.Ed. 643 (1884). See generally Totus v. United States, 39 F.Supp. 7, 11 (E.D.Wash.1941). The statute extends to Indians the rights of national citizenship, but expressly does not affect rights to tribal or other property.
 
 
 11
 Witt and Jarman's claim to a vested right to receive an allotment without first qualifying for an eligibility certificate is also incorrect. Congress may require proof of eligibility before allotting land. It has broad power over allotment procedures before a patent is issued. Northern Cheyenne Tribe v. Hollowbreast, 425 U.S. 649, 655-56, 96 S.Ct. 1793, 1796-1797, 48 L.Ed.2d 274 (1976). Appellants' reliance on Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912), is misplaced. In that case, the Supreme Court recognized that individual Indians had vested property rights in previously allotted land. Unlike the Indians in Choate, Witt and Jarman have not yet received land patents. The requirement of filing an eligibility certificate does not deprive them of any vested right.[7] See Sizemore v. Brady, 235 U.S. 441, 449-50, 35 S.Ct. 135, 136, 59 L.Ed. 308 (1914) (Congress may change conditions of entitlement to allotment because no vested rights created prior to selection).
 
 IV
 The Eligibility Standards
 
 12
 An eligibility certificate will be issued to a person claiming Cherokee or Choctaw descent only if the applicant can trace an ancestor to the Dawes Commission rolls. This standard is derived from the legislation governing the creation of the rolls. The numerous statutes governing the Dawes Commission set up an elaborate system of application, hearing, and judicial review to determine who was to be enrolled as a member of the Five Civilized Tribes.[8] Agreements with the tribes and other legislation made the rolls final and conclusive on eligibility for allotment of tribal lands.[9]
 
 
 13
 Both Witt and Jarman sought allotments in public, not tribal lands. The effect of the eligibility standards is to extend the restrictions on tribal land allotments to applicants for public land. We have interpreted other restrictions on allotment of tribal lands to apply also to allotment of public lands. Pallin v. United States, 496 F.2d 27, 35 (9th Cir. 1974). The creation of the Dawes Commission rolls was prompted by the need for a conclusive determination of eligibility for allotment of tribal land. The similar need for a conclusive eligibility standard in public land allotments is persuasive evidence that Congress intended the rolls to determine eligibility for both types of land. Therefore, we believe that the Secretary of the Interior acted within his implied powers under the General Allotment Act in promulgating regulations requiring an eligibility certificate which was available only to persons who could trace an ancestor to the Dawes Commission rolls.
 
 
 14
 We conclude that this use of the rolls does not violate the United States Constitution. Congress, directly or by delegation, has the power to define who is an Indian for purposes of determining property rights. Simmons v. Seelatsee, 244 F.Supp. 808, 813-15 (E.D.Wash.1965), aff'd per curiam, 384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480 (1966). The Supreme Court has held that the acts creating the Dawes Commission and requiring preparation of conclusive rolls limiting eligibility for distribution of tribal lands did not deprive excluded Indians of vested rights. Stephens v. Cherokee Nation, 174 U.S. 445, 488, 19 S.Ct. 722, 738, 43 L.Ed. 1041 (1899) (interpreting and upholding the Curtis Act).
 
 
 15
 In Delaware Tribal Business Commission v. Weeks, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977), the Court held that Congress' determination of who was an Indian for purposes of sharing in an appropriation provided equal protection because the eligibility classification was "tied rationally to the fulfillment of Congress' unique obligation toward the Indians." Id. at 85, 97 S.Ct. at 919. In connection with the Dawes Commission, Congress set up an elaborate procedural system in order to compile final rolls of tribal membership and thereby ensure that benefits were not extended to non-Indians. This purpose is "rationally tied" to the fulfillment of Congress' "unique obligation." Thus, the eligibility requirements do not violate equal protection.
 
 
 16
 Witt has no right to seek an allotment for his niece because he did not qualify under the valid requirements for an eligibility certificate. The summary judgment against him was proper. The question of Jarman's eligibility for a certificate was not decided by the district court because Jarman's action was dismissed at an early stage for procedural reasons.
 
 V
 
 17
 Jarman's Failure to File Memorandum of Points and Authorities
 
 
 18
 The district court's dismissal of Jarman's action for failure to file a memorandum of points and authorities is reviewable for abuse of discretion. See Tolbert v. Leighton, 623 F.2d 585, 586 (9th Cir. 1980). In Tolbert, a dismissal for failure to attend a pretrial conference was an abuse of discretion where the case was only seven months old, no warning had been given, there was no other evidence of dilatoriness, and the court failed to consider less drastic, alternative sanctions. In Raiford v. Pounds, 640 F.2d 944, 945 (9th Cir. 1981) (per curiam), we held that dismissal should be imposed only in extreme circumstances, and only after consideration of less drastic alternatives.
 
 
 19
 The Government filed its motion to dismiss on February 23, 1981, and the judge granted it by minute order in chambers March 20, 1981. The case had been filed only three months before. There is no indication in the record that the district judge considered the efficacy of alternative sanctions before dismissal, nor that Jarman, a pro se litigant, was given an express warning that he might suffer dismissal. Jarman's complaint reads like a brief and fully sets out his legal position and authorities.
 
 
 20
 Under these circumstances, we hold that the dismissal against Jarman for failure to file a memorandum of points and authorities opposing the Government's motion to dismiss was an abuse of discretion. On appeal, the Government does not attempt to defend the dismissal as a sanction but instead seeks affirmance on the grounds argued below: the constitutionality and propriety of the land classification system. Because the record below does not show whether Jarman had met or could have met the preconditions for an allotment, we decline to reach the issues of the constitutionality and propriety of the land classification. These issues will be decided by the district court, if necessary,[10] after the development of the facts. The issues open on remand will include whether Jarman has acquired an eligibility certificate and whether he has filed a petition for reclassification of the tracts applied for if they are not already classified for public disposal.
 
 Conclusion
 
 21
 Congress had the power to define who was an "Indian" for the purpose of receiving allotments. Under the statutes relating to the Dawes Commission, it defined members of the Cherokee and Choctaw tribes for eligibility for allotment of tribal land to include only persons who could trace ancestry to the Dawes Commission rolls. The numerous statutes show an intent that eligibility for allotment of public lands also be limited by the rolls. This eligibility standard is rationally related to Congress' unique obligation to the Indians, and thus, is constitutional. Since Witt could not qualify under the standard, the summary judgment on his action to enforce allotment rights is affirmed. We reverse the dismissal of Jarman's action for failure to file a memorandum of points and authorities because there is no indication in the record that any warning of the possibility of dismissal was given or that the district court could not have applied a less drastic sanction.
 
 
 22
 The summary judgment against Witt is AFFIRMED. The dismissal as to Jarman is REVERSED and REMANDED.
 
 
 
 [1]
 The requirement for a petition for reclassification is found in 43 C.F.R. § 2531.2, which provides:
 § 2531.2 Petition and applications.
 (a) Any person desiring to receive an Indian allotment ... must file with the authorized officer, an application, together with a petition on forms approved by the Director, properly executed, together with a certificate from the authorized officer of the Bureau of Indian Affairs that the person is (an) Indian and eligible for allotment, as specified in § 2531.1(b). However, if the lands described in the application have been already classified and opened for disposition under the provisions of this part, no petition is required. The documents must be filed in accordance with the provisions of § 1821.2 of this chapter.
 
 
 [2]
 Jarman's action concerns, in part, allegations that the Secretary of the Interior abused his discretion to classify public lands. Without deciding the scope of judicial review of the Secretary's land classification authority, we note that the discretionary nature of the issues does not deprive the district court of all jurisdiction over Jarman's action under 25 U.S.C. § 345. Pence v. Kleppe, 529 F.2d 135, 138-40 (9th Cir. 1976) (Pence I); see Hopkins v. United States, 414 F.2d 464 (9th Cir. 1969)
 
 
 [3]
 25 U.S.C. § 334. Section Four of the Act provides:
 § 334. Allotments to Indians not residing on reservations
 Where any Indian not residing upon a reservation, or for whose tribe no reservation has been provided by treaty, Act of Congress, or Executive order, shall make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated, he or she shall be entitled, upon application to the local land office for the district in which the lands are located, to have the same allocated to him or her, and to his or her children, in quantities and manner as provided in sections 331-334, 339, 341, 342, 348, 349 and 381 of this title for Indians residing upon reservations....
 
 
 [4]
 The Five Civilized Tribes include the Cherokees, Choctaws, Chickasaws, Creeks, and Seminoles. Federal Indian Law at 986
 
 
 [5]
 For a description of the preparation and purposes of the rolls, see generally Woodward v. de Graffenried, 238 U.S. 284, 35 S.Ct. 764, 59 L.Ed. 1310 (1915); Rowe v. Sartain, 107 Okl. 199, 230 P. 919 (1924), appeal dismissed, 269 U.S. 537, 46 S.Ct. 106, 70 L.Ed. 400 (1925); Federal Indian Law at 999-1006
 
 
 [6]
 43 C.F.R. § 2531.1 provides:
 § 2531.1 Qualifications of applicants
 (a) General. An applicant for allotment under the fourth section of the act of February 8, 1887, as amended, is required to show that he is a recognized member of an Indian tribe or is entitled to be so recognized. Such qualifications may be shown by the laws and usages of the tribe. The mere fact, however, that an Indian is a descendant of one whose name was at one time borne upon the rolls and who was recognized as a member of the tribe does not of itself make such Indian a member of the tribe.
 The possession of Indian blood, not accompanied by tribal affiliation or relationship, does not entitle a person to an allotment on the public domain. Tribal membership, even though once existing and recognized, may be abandoned in respect to the benefits of the fourth section.
 (b) Certificate that applicant is Indian and eligible for allotment. Any person desiring to file application for an allotment of land on the public domain under this act must first obtain from the Commissioner of Indian Affairs a certificate showing that he or she is an Indian and eligible for such allotment, which certificate must be attached to the allotment application....
 
 
 [7]
 Our decision in Pence I., 529 F.2d at 141, that an eligible person's interest in an allotment is protected by procedural due process is not relevant here. Our mandate in Pence I does not require the BLM to hold hearings when the applicant fails to state facts which would establish eligibility for an allotment. See Pence v. Andrus, 586 F.2d 733, 743 (9th Cir. 1978)
 
 
 [8]
 The Commission was appointed by Congress in 1893 to negotiate with the tribes for division and allotment of tribal lands in severalty to individual Indians. Act of March 3, 1893, ch. 209, § 16, 27 Stat. 612, 645; Federal Indian Law at 999. After several years of fruitless negotiations, the Commission was directed to prepare tribal membership rolls as a step toward involuntary allotment of tribal lands. See Federal Indian Law at 1001; Act of June 10, 1896, ch. 398, 29 Stat. 321, 322; Act of June 28, 1898, ch. 517, § 11, 30 Stat. 495, 497 (Curtis Act). The Commission was to accept individual applications for enrollment and to hold hearings. An appeal to the United States District Court could be taken within 60 days of denial of an application for enrollment. Agreements later reached with the Cherokee and Choctaw tribes similarly provided for application, hearing, and appeal. See Act of June 28, 1898, ch. 517, § 29, 30 Stat. 495, 505 (offering agreement for Choctaw ratification), ratified by Congress in final form by Act of July 1, 1902, Pub.L.No. 57-228, ch. 1362, 32 Stat. 641; Act of July 1, 1902, Pub.L.No. 57-241, ch. 1375, 32 Stat. 716 (offering agreement for ratification by Cherokee Nation)
 
 
 [9]
 See Curtis Act § 21, 30 Stat. 495, 503 (rolls shall be final and named persons and their descendants shall alone constitute the tribes); Act of July 1, 1902, Pub.L.No. 57-228, ch. 1362, § 35, 32 Stat. 641, 649 (agreement with Choctaws); Act of July 1, 1902, Pub.L.No. 57-241, ch. 1375, §§ 25, 29, 31, 32 Stat. 716, 720-21 (agreement with Cherokees); Act of April 26, 1906, Pub.L.No. 59-129, ch. 1876, § 2, 34 Stat. 137, 138 (depriving Secretary of the Interior of jurisdiction to approve additional enrollments after March 4, 1907)
 
 
 [10]
 On the slim record before us, it is unclear whether Jarman filed for an eligibility certificate. If Jarman cannot qualify for a certificate, it will not be necessary to reach his attacks on the Secretary's land classification authority. Our holding as to Witt that the eligibility standards are constitutional means that Jarman must obtain an eligibility certificate as a precondition to any right he may assert to an allotment