Robert LEPKOWSKI, Appellant,

v.

UNITED STATES DEPARTMENT of the TREASURY, et al.

No. 85–5867.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1986.

Decided Nov. 14, 1986.

---

Mitchell Eskenazi, Arlington, Va., a member of the Bar of the Second Division First Appellate Section of New York, pro hac vice by special leave of Court for appellant. Jack B. Solerwitz, Mineola, N.Y., was on the brief for appellant.

Janet A. Bradley, Atty., Dept. of Justice, Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup and Robert S. Pomerance, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellees.

Joseph E. diGenova, U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before ROBINSON and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

Opinion concurring in the judgment filed by Circuit Judge ROBINSON.

STARR, Circuit Judge:

This is an appeal from the District Court's denial of a motion for reconsideration sought under Rule 60(b)(1) of the Federal Rules of Civil Procedure. The underlying action had been dismissed for protracted failure to file an opposition to a motion to dismiss filed by the Department of Treasury. Attorneys for Mr. Lepkowski argued before the District Court that their failure to file a timely response to a motion to dismiss was "excusable neglect" within the meaning of Rule 60(b).[1] The District Court was unpersuaded that counsel's un-

---

1. Rule 60(b) of the Federal Rules of Civil Procedure provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

disputed neglect was, in fact, excusable. As we may review the trial court's Rule 60(b) determination only for abuse of discretion, *Browder v. Director, Illinois Department of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978), this court cannot lightly overturn that decision.[2] As no substantial reason for reversal has been advanced, we are constrained on the record before us to affirm.

Mr. Lepkowski's complaint under the Privacy Act, 5 U.S.C. § 552 (1982), was filed in September 1984 by his attorney of record, Jack B. Solerwitz, in the United States District Court for the District of Columbia. Mr. Solerwitz's principal law offices, as we understand from his various filings, are located in Mineola, New York. In November 1984, the Government moved to dismiss the complaint for want of subject matter jurisdiction based upon the applicable statute of limitations and for failure to state a claim for relief under the Privacy Act.

Rule 1–9(d) of the Local Rules of the District Court requires that an opposition to a motion to dismiss be filed within ten days; the Rule further provides that "[i]f such opposing statement is not filed within the prescribed time, the court may treat the motion as conceded." The opposition was due in early December 1984, yet as confirmed by the testimony of Mr. Solerwitz's associate, a timely response was never filed or served. Hearing Transcript at 4 (Feb. 27, 1985).

Some time after the due date, although ultimately to no avail, the District Judge's law clerk telephoned Mr. Solerwitz's law offices to inquire about the matter. According to the testimony of Mr. Solerwitz's associate, he and Mr. Solerwitz (the sole attorney of record) drafted another opposition for the latter's signature, which was then mailed. *Id.* However, neither the court nor opposing counsel received that document.

A number of telephone conversations between the Clerk's Office of the District Court and Mr. Solerwitz's office over the next two months failed to produce the long-awaited opposition. *Id.* at 2. On January 29, 1985, again prompted by the Clerk of the Court, Mr. Solerwitz's associate either "redrafted," *id.* at 5, or "ran off," *id.* at 2, yet another copy of the opposition for Mr. Solerwitz's signature. Again, neither court nor counsel received the elusive document.

The District Court finally set the motion for hearing at a status conference on February 27, 1985, three months after the motion to dismiss had been filed. Mr. Solerwitz's associate attended the status conference,[3] with a copy of the unfiled January 29th opposition and certificate of service (dated Jan. 30, 1985) in hand, which he then personally furnished to opposing counsel. The attorney failed, however, to file the opposition with the District Court. No opposition ever having been received, no explanation for the delay ever having been provided, and no tenable defense to the statute of limitations defense having been interposed, the District Court treated the motion to dismiss as conceded under Local Rule 1–9(d) and dismissed the complaint with prejudice. Order, Civ. No. 84–2964 (Feb. 27, 1985).

In mid-April 1985, Mr. Solerwitz filed a motion for reconsideration pursuant to Rule 60(b), contending that his failure to file an opposition had been "unintentional and inexplicable," Motion to Reconsider at 10 (Apr. 16, 1985), the result of "law office

---

2. The order of dismissal on the merits, rendered on February 27, 1985, is not before us for review. That order was never appealed, and post-judgment motions under Rule 60(b) do not toll the time for appeal of the underlying judgment. *Browder,* 434 U.S. at 263 n. 7, 98 S.Ct. at 560 n. 7. Moreover, the appeal of a Rule 60(b) disposition "does not bring up the underlying judgment for review." *Id.; Hodgson v. United Mine Workers,* 473 F.2d 118, 124 n. 28 (D.C.Cir.1972).

3. Despite the local rules governing appearances before the District Court, Mr. Solerwitz's associate was not a member of the bar of the court and did not seek admission *pro hac vice.* Local rules also require lawyers appearing before the court to have a local office; Mr. Solerwitz used a local address in signing the complaint, but both he and his associate practiced in New York.

failure." *Id.* at 6. This motion was heard in June 1985. Although Mr. Solerwitz was himself a member of the District Court bar, the firm chose not to send one of its own attorneys to the hearing, but instead retained local counsel in the District of Columbia to argue the motion. The local attorney offered argument on the underlying merits of Mr. Lepkowski's cause of action, Transcript at 5 (June 28, 1985), and on the reasons for the *post*-dismissal delay in seeking reconsideration, *id.* at 6, but never advanced any explanation for Mr. Solerwitz's neglect, as sole counsel of record, to file any response to the dismissal motion, other than to observe that "[h]e is a busy lawyer, who had an associate who was assigned to the case." *Id.* at 6.

■ This continuing course of conduct has nowhere been justified in the record. Mr. Solerwitz describes his failure to respond to a motion to dismiss his client's complaint as merely an "irregular presentation," Motion to Reconsider at 11. But, in truth, it was no presentation at all. Mr. Solerwitz has never, to this day, filed an opposition with the District Court; it appears in the record as an appendix to the Motion for Reconsideration. Although counsel was aware of his own default throughout the entire period, and indeed received repeated notice to that effect from the court, he failed to exert the minimal effort which would have cured his omission. Mr. Solerwitz readily concedes that the failure to respond was strictly due to the neglect of his office, yet he claims that his lack of attention in this matter was excusable. The only "excuse" offered, however, has been the reiteration of the protracted derelictions of counsel. Not a word of explanation nor a justification for the manifest negligence in this chronicle of events has been forthcoming. Mr. Solerwitz does indeed go to great lengths to explain why the Motion to Reconsider was not unduly delayed; this, however, is scarcely relevant to the point at hand and cannot do service as a justification for the failure to respond in the underlying action.

On this record, we are unable to say that the District Court's denial of the Rule 60(b) motion rose to the level of an abuse of discretion. It was well within the bounds of the court's permissible discretion to find that Mr. Lepkowski's counsel had not even attempted to demonstrate that his dilatory failings were the product not of mere neglect but, rather, *excusable* neglect, for which his client should not be penalized.

In a recent decision, *Shea v. Donohoe Construction Co.,* 795 F.2d 1071 (D.C.Cir. 1986), this court has had occasion to analyze decisions in which excusable neglect was raised as the basis of either a direct appeal or a Rule 60(b) motion for reinstatement. Unlike *Shea,* this is not a case in which dismissal reflected an exercise of the court's inherent power to control its docket. *See also Instantwhip v. Aeration Processes, Inc.,* 797 F.2d 1093 (D.C.Cir.1986) (dismissal at pretrial conference was improper discovery sanction; no violation of a court rule or court order). Rather, a neutral rule of general application required a response to a motion within ten days. Dismissal under such a neutral rule is by no means an ad hoc sanction for misconduct; in such situations, violation of the rule itself indicates prejudice to an already overburdened system of litigation.

In this case, the Government's motion to dismiss challenged the very timeliness of Mr. Lepkowski's complaint. The Local Rule gave notice to the world that failure to respond within the prescribed time could be treated by the trial court as a concession of the motion. Moreover, as we have seen, the District Court did not act precipitously, but to the contrary, took steps to ensure that the litigation process could get back on track, repeatedly attempting to pry out an opposition to the motion. Through his continued silence, Mr. Solerwitz conceded this legal issue. In pursuing reopening of the judgment, no showing was made that the client was misled by counsel as to the status of his case or even that he was unaware of his counsel's action. *Jackson v. Washington Monthly Co.,* 569 F.2d 119, 122 & nn. 12, 16, 18 (D.C.Cir.1977).

■ Finally, motions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense; we cannot escape the fact that the complaint and the proposed opposition were insufficient as a matter of law to defeat the motion on the statute of limitations ground.[4] Under these circumstances, we cannot say that the District Court abused its discretion in denying relief from judgment.

Our concurring colleague is troubled that our analysis embodies a form of mechanical jurisprudence which exalts the Local Rule to a role of unduly dispositive preeminence. We seek to allay these concerns for we have no such intent. To the contrary, we emphatically do not countenance the rigid imposition of the sanctions of dismissal, as an automatic or reflexive response to the violation of a neutral rule of general application. Indeed, we have carefully canvassed the entire record of this case and reviewed the totality of the circumstances leading up to the District Court's dismissal. *See supra* at 1311–12. It is based upon that comprehensive review, pursuant to an abuse of discretion standard, that we have arrived at the judgment that the District Judge acted appropriately under the circumstances.

Nor do we take issue with the formidable body of case law so meticulously elaborated by our colleague.[5] The burden of

---

**4.** Although no opposition had been filed, the District Court did entertain a brief argument on the merits by Government counsel which accurately summarized Mr. Lepkowski's response to the statute of limitations challenge. *See* Hearing Transcript at 5–6 (Feb. 27, 1985). The flaw in the proposed, unfiled opposition was that it did not set forth facts (or support any facts by affidavits or other material) as to when Mr. Lepkowski in fact received a letter from the Department of Treasury dated September 14, 1982, which at the very latest, put him on notice of any cause of action that he might have.

**5.** Our colleague emphasizes two cases from this circuit, which in our view, are entirely compatible with our totality-of-the-circumstances approach. In *Bibeau v. Northwest Airlines,* 429 F.2d 212 (D.C.Cir.1970), for example, the court in overturning the District Court dismissal was influenced by the considerable trial preparations that had already been completed; that the dismissed plaintiffs were minor children; and, most important, that the rule permitting dismissal for want of prosecution required notice to the parties, yet such notice was never given. *Id.* at 213. There was thus a violation by the trial court of its own rule upon which the dismissal was purportedly based. *Compare Sheaffer v. Warehouse Employees Union, Local No. 730,* 408 F.2d 204, 206 (D.C.Cir.) (dismissal upheld "in view of the long history of procedural ineptness and delay" and violations of local rules), *cert. denied,* 395 U.S. 934, 89 S.Ct. 1996, 23 L.Ed.2d 449 (1969). As the *Sheaffer* court, speaking through Judge Tamm, indicated, we are to examine whether the trial judge's action was "based upon the particular history of the case." *Id.* at 206. That is precisely what we have done in the case at hand.

   The richness of the case law from other circuits attests eloquently to the fact-specific nature of the appellate review function. Our colleague emphasizes the Fifth Circuit's decision in *Ramsey v. Signal Delivery Service,* 631 F.2d 1210 (1980), as "strikingly similar to the one now before us." Concurring Opinion at 1316. But *Ramsey* did not involve, as here, the painstaking efforts undertaken by the District Court to obtain a responsive filing from the plaintiff's counsel in order to bring the litigation to a point ripe for resolution. From all that appears in *Ramsey's* abbreviated, one-paragraph description of the pertinent facts, 631 F.2d at 1214, the trial judge employed the rigidly mechanical approach that our concurring colleague rightly denounces. In *Boughner v. Secretary of HEW,* 572 F.2d 976 (3rd Cir.1978), on the other hand, an elaborate showing was made that the prior counsel in the case had failed to file responsive pleadings in 52 similar cases (involving claims for benefits under the Federal Coal Mine Health and Safety Act). That showing, the Third Circuit found, was "sufficiently exceptional and extraordinary to mandate relief." *Id.* at 978. In stark contrast, no such showing has ever been attempted, much less made, in the case at hand. *Witt v. United States,* 681 F.2d 1144 (9th Cir. 1982), likewise invoked by our brother, involved a *pro se* litigant whose case was dismissed for failure to file a memorandum of points and authorities in opposition to the defendant's motion to dismiss. *Witt's* pertinent facts, as in *Boughner,* are set forth in the space of a barebones, solitary paragraph. Nonetheless, from what appears in that skeletal rendition of facts, there was in *Witt* no indication whatever that the District Court, as here, sought to elicit the required filing from the litigant. Moreover, it appears that the *pro se* litigant's legal position had been fully set forth in the complaint, itself, thereby suggesting that the District Court was reflexively enforcing the Local Rule for its own sake, rather than to promote the ends of justice. Needless to say, such unthinking, blind enforcement could, we believe, work an abuse of dis-

decisional law, however, is that each case must be analyzed on its own merits under an abuse of discretion standard. That is precisely what we have sought to do here.

For the foregoing reasons, the judgment of the District Court is

*Affirmed.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in the judgment:

Today's majority opinion leaves me more than just a little unsure as to what it decides. My colleagues seem first to espouse the novel legal theory that Rule 1–9(d) of the District Court,[1] in permitting a motion to dismiss to be treated as conceded absent a timely opposition, removes any need for broader consideration of the propriety of a dismissal.[2] "[V]iolation of the rule," they say, "itself indicates prejudice to an already overburdened system of litigation,"[3] which may itself be enough to justify riddance of the transgressor's case.[4] Invocation of this "neutral rule of general application"[5] would thus displace an exercise of judicial discretion determining whether, under all circumstances relevant, the judicial process should be vindicated by imposing a sanction on a delinquent lawyer rather than by dismissal of the suit of his apparently blameless client.

My colleagues then execute what looks to me like an about-face. They disavow

any purpose to elevate the rule "to a role of unduly dispositive preeminence,"[6] and insist that they "emphatically do not countenance the rigid imposition of the sanction of dismissal as an automatic or reflective response to the violation of a neutral rule of general application."[7] Disposition of the appeal, they say, rests upon a measure of "the totality of the circumstances leading up to the District Court's dismissal" by "an abuse-of-discretion standard."[8]

Were it up to me, I would put two matters completely to rest. First, I would hold that any attempt to herald rule-violation dismissals as unfailingly appropriate is simply unsupportable.[9] Second, viewing dismissal of Lepkowski's action as an exercise of discretion, I would conclude that dismissal was so drastic a measure as to constitute an abuse.[10] In the end, however, I am satisfied that Lepkowski's defense to the motion to dismiss is too anemic to warrant a reopening of the order of dismissal.[11] Accordingly, and solely for the latter reason, I concur in affirmance.

## I

There already is binding precedent in this circuit for the proposition that a dismissal for infraction of a local rule designed to curtail delay in litigation of claims may involve an abuse of judicial discretion. In

cretion. In this case, of course, Lepkowski filed no such statement of position; what is more, his unfiled opposition is so lacking in persuasive force that our colleague is willing to opine that "Lepkowski's claim has little or no chance of surviving the dismissed-motion's objection that it became time-barred." Concurring Opinion at 1321. The fact of the weakness of Lepkowski's position on the statute of limitations defense, we again observe, *see supra* note 4, was brought before the District Court during the course of the final hearing. That fact was thus part of the totality of the circumstances that moved the District Court to dismiss the case, a result which our colleague, like we, would sustain.

1. "Within ten days of the date of service or such other time as the court may direct, an opposing party shall serve and file a statement of points and authorities in opposition to the motion, together with a proposed order. If such opposing statement is not filed within the prescribed

time, the court may treat the motion as conceded." D.D.C. R. 1–9(d).

2. Majority Opinion (Maj.Op.) at 1311.

3. *Id.* at 1311.

4. *Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1075–77 (D.C.Cir.1986).

5. *Id.* at 1313.

6. *Id.* at 1314.

7. *Id.*

8. *Id.*

9. Discussed in Parts I, II *infra.*

10. Discussed in Part III *infra.*

11. Discussed in Part IV *infra.*

*Bibeau v. Northeast Airlines, Inc.,*[12] we reversed the District Court's refusal to reinstate a wrongful death action terminated under a local rule providing for dismissal for failure of a plaintiff actively to prosecute her claim for six months.[13] While "we recognize[d] and wholeheartedly approve[d] of the District Court's justifiable interest in eliminating the 'dead wood' from its calendar[,]" we admonished that "at the same time the interests of justice require that the dereliction of counsel should not uniformly bar plaintiffs with valid claims from recovery through an inflexible application of the rule."[14] And "[w]hile it [was] within the discretion of the District Court to deny a motion to reinstate a case which has been dismissed for lack of prosecution,"[15] we held, in light of the cumulative weight of the circumstances, that the bounds of discretion had been exceeded.[16]

In *Sheaffer v. Warehouse Employees Union Local 730,*[17] we gave a local rule somewhat greater prominence in an involuntary dismissal, yet our ruling was bottomed on the District Court's exercise of discretion, as distinguished from a bare application of the rule. For more than four years, the case had been handled in the District Court "in an extremely dilatory fashion,"[18] accentuated by "numerous violations of our local court rules and pretrial orders, and a complete lack of diligence in bringing the case to trial ...,"[19] and eventually was dismissed for want of prosecution. In affirming, we called attention to the local rule involved in *Bibeau,*[20] and said that it had "legal efficacy and should be enforced."[21] Our affirmance, however, was predicated, not on the rule,[22] but rather on the District Court's inherent power to dismiss for lack of prosecution.[23] "[N]o abuse of discretion occurred here," we said, "in view of the long history of procedural ineptness and delay on the part of appellants."[24]

Cases from other circuits adhere virtually uniformly to this treatment: that dismissal pursuant to a local rule of this nature demands nonetheless an exercise of judicial discretion that is reversible for abuse. In *Ramsey v. Signal Delivery Service,*[25] a case strikingly similar to the one now before us, the plaintiffs did not respond to the defendants' motion to dismiss within the ten-day limit set by local rule, which further provided that such an omission would indicate that there was no opposition. The District Court, after waiting almost three months for the response, grant-

**12.** 139 U.S.App.D.C. 28, 429 F.2d 212 (1970).

**13.** D.D.C. R. 13(a) (now abrogated), which provided in pertinent part:
> If a party seeking affirmative relief fails for six months from the time action may be taken to comply with any law, rule or order requisite to the prosecution of his claim, or to avail of a right arising through the default or failure of an adverse party, or take other action looking to the prosecution of his claim, or within six months of the time a case is reinstated after being dismissed, the complaint, counter-claim, cross-claim, or third-party complaint of said party, as the case may be, shall stand dismissed without prejudice....

**14.** *Bibeau v. Northeast Airlines, Inc., supra* note 12, 139 U.S.App.D.C. at 29, 429 F.2d at 213.

**15.** *Id.*

**16.** *Id.* at 29–30, 429 F.2d at 213–14.

**17.** 132 U.S.App.D.C. 401, 408 F.2d 204, *cert. denied,* 395 U.S. 934, 89 S.Ct. 1996, 23 L.Ed.2d 449 (1969).

**18.** *Id.* at 402, 408 F.2d at 205.

**19.** *Id.*

**20.** D.D.C. R. 13(a), quoted in relevant part *supra* note 13.

**21.** *Sheaffer v. Warehouse Employees Union Local 730, supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206.

**22.** Unlike the dismissal in the case at bar, the local rule involved in *Bibeau* and *Sheaffer* specified a dismissal without prejudice. See note 13, *supra.* Consequently, the rule itself interposed no obstacle to reinstitution of the dismissed suit although, of course, it might have become time-barred by virtue of a statute.

**23.** *Sheaffer v. Warehouse Employees Union Local 730, supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206.

**24.** *Id.*

**25.** 631 F.2d 1210 (5th Cir.1980).

ed the motion as unopposed.[26] On appeal, this disposition was held to be erroneous despite the authority purportedly conferred by the rule.[27] The court said that " '[b]efore a trial judge dismisses a complaint with prejudice, there should be a clear record of delay or contumacious conduct, and a finding that lesser sanctions would not serve the system of justice.' "[28] The court was particularly concerned by the failure of the District Court to consider lesser sanctions[29] and held that in any event "[t]he three-month delay between the filing of defendant's motion to dismiss and entry of judgment against plaintiffs did not constitute the type of extreme delay" justifying dismissal.[30]

Similarly, in *Boughner v. Secretary of HEW,*[31] a local rule accorded ten days for responses to motions and specified that "[a]ny respondent who fails to comply with this rule shall be deemed not to oppose such motion."[32] The plaintiffs, through negligence of their attorney, did not oppose summary judgment motions in timely fashion, and the motions were granted. On appeal, the Third Circuit was "not unmindful of the need for judicial eagerness to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments," but re-

versed with the observation that "these commendable aspirations should never be used to thwart the objectives of the blind goddess."[33]

*Witt v. United States*[34] is yet another example of disapproval of mechanical application of a local dismissal rule. The plaintiff's *pro se* suit was dismissed when he neglected to file a memorandum of points and authorities in opposition to a motion to dismiss.[35] The Ninth Circuit noted, however, that the case had been filed only three months previously and that nothing in the record suggested that alternative sanctions had been considered.[36] "Under these circumstances," the court held, "the dismissal ... was an abuse of discretion."[37]

Other decisions reach much the same conclusion.[38] Even when appellate courts have upheld dismissals under local rules, they have subjected the ruling to abuse-of-discretion criteria.[39] Cases involving noncompliance with court orders rather than court rules are reviewed under these standards as well.[40] The unavoidable conclusion is that the presence of a local rule or a specific order setting time limits for procedural activity does not alter significantly

**26.** *Id.* at 1212.

**27.** *Id.* at 1213–14.

**28.** *Id.* at 1214 (quoting *Luna v. International Ass'n of Machinists,* 614 F.2d 529, 531 (5th Cir. 1980)).

**29.** *Ramsey v. Signal Delivery Serv., supra* note 25, 631 F.2d at 1214.

**30.** *Id.*

**31.** 572 F.2d 976 (3d Cir.1978).

**32.** *Id.* at 977 n. 1.

**33.** *Id.* at 978–79.

**34.** 681 F.2d 1144 (9th Cir.1982).

**35.** *Id.* at 1146.

**36.** *Id.* at 1149.

**37.** *Id.*

**38.** See, e.g., *Sykes v. United States,* 290 F.2d 555, 556–57 (9th Cir.1961) (dismissal under local rule allowing actions in which no steps had been taken for six months to be called and dismissed in absence of appearance of good cause for lack of prosecution was, under the circumstances, an improper exercise of discretion); *Jarva v. United States,* 280 F.2d 892, 894–95 (9th Cir.1960) (similar).

**39.** See, e.g., *Darlington v. Studebaker-Packard Corp.,* 261 F.2d 903, 905–06 (7th Cir.), *cert. denied,* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); *Henderson v. Duncan,* 779 F.2d 1421, 1423–25 (9th Cir.1986).

**40.** See, e.g., *Asociacion de Empleados del Instituto de Cultura Puertorriquena v. Rodriquez Morales,* 538 F.2d 915, 916–18 (1st Cir.1976) (court order directing plaintiff to file opposition and brief in reply to defendant's motion to dismiss within 15 days); *Luna v. International Ass'n of Machinists, supra* note 28, at 530–32 (court orders directing plaintiff to file amended complaint and to appear at trial).

the body of well-settled principles governing review of dismissals for tardiness.

## II

More fundamentally, any notion that omission of a timely procedural step always justifies the grant of a motion to dismiss is totally at odds with the doctrinal foundation of involuntary dismissal for want of prosecution. From ancient times, courts have invoked this sanction as a means of curbing undue delay in the disposition of litigation and resulting congestion in their calendars.[41] Authority to do so, the Supreme Court instructs, "has generally been considered an 'inherent power' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[42] So, while Federal Civil Rule 41(b)[43] partly

codifies this authority[44] and local district court rules attest its wide usage,[45] they are but manifestations, not sources, of the power.[46] The absence of a local rule on the subject does not preclude dismissal,[47] nor can the existence of such a local rule expand the power beyond its accustomed limits.[48] Dismissal of a lawsuit—a drastic step—must rest on acceptable grounds, and a local rule purporting to authorize dismissal on less than what Rule 41(b) and its historical forerunners demand is beyond the power of the court promulgating it.

It is vitally important to appreciate that the authority to dismiss for want of prosecution is simply the prerogative to do so if and when the facts of the case warrant that course. It is universally held that such a dismissal implicates the discretion of the court[49] and is reversible for abuse.[50]

**41.** *Link v. Wabash R.R.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734, 737–38 (1962).

**42.** *Id.* at 630–31, 82 S.Ct. at 1389, 8 L.Ed.2d at 738 (footnote omitted).

**43.** Fed.R.Civ.P. 41(b), providing in relevant part: For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

**44.** *Link v. Wabash R.R.*, *supra* note 41, 370 U.S. at 630, 82 S.Ct. at 1388, 8 L.Ed.2d at 738.

**45.** See *id.* at 631–32 n. 7, 82 S.Ct. at 1389 n. 7, 8 L.Ed.2d at 738 n. 7, citing rules "establish[ing]

special call calendars of 'stale' cases for the purpose of dismissing those as to which neither adequate excuse for past delays nor reason for a further continuance appears."

**46.** See *McCargo v. Hedrick*, 545 F.2d 393, 402 (4th Cir.1976).

**47.** *Sheaffer v. Warehouse Employees Union Local 730*, *supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206.

**48.** While district courts may adopt rules of practice, these rules must not be inconsistent with the Federal Rules of Civil Procedure. Fed.R. Civ.P. 83. Authority to grant a motion to dismiss for failure to prosecute is conferred by Rule 41(b), but on a clearly permissive rather than a mandatory basis. This is apparent from the language of Rule 41(b), see note 43 *supra*, and follows from the very nature of the inherent power which it codifies in part, see notes 49–52 *infra* and accompanying text. These considerations clearly impose a limitation on court rulemaking.

**49.** E.g., *Link v. Wabash R.R.*, *supra* note 41, 370 U.S. at 633, 82 S.Ct. at 1390, 8 L.Ed.2d at 739; *Cherry v. Brown Frazier-Whitney*, 179 U.S.App. D.C. 10, 14–15, 548 F.2d 965, 969–70 (1976); *Sheaffer v. Warehouse Employees Union Local 730*, *supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206.

**50.** E.g., *Cherry v. Brown-Frazier-Whitney*, *supra* note 49, 179 U.S.App.D.C. at 14–15, 548 F.2d at 969–70; *Sheaffer v. Warehouse Employees Union Local 730*, *supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206.

All pertinent circumstances in the particular case must be examined and weighed in determining whether dismissal is the appropriate course.[51] The necessarily limited purview of the local rule before us is obviously incompatible with the wide lens of judicial discretion.

My colleagues assert that violation of the rule "itself indicates prejudice to an already overburdened system of litigation,"[52] thereby implying that nothing else in the case is worthy of consideration. To be sure, we reminded very recently that procrastination in the prosecution of litigation may "put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay."[53] But the impact of which we spoke is one "requir[ing] the court to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases ...;"[54] and, even then, any sanction is to follow as the product of an exercise of discretion,[55] not a blind adherence to a text insensitive to circumstances and consequences. Every dereliction causing delay drains judicial resources to some degree and makes its own contribution to calendar congestion, but it does not necessarily follow that dismissal is in order.

This is not to say that the court must tolerate procrastination by attorneys and the impositions it visits upon courts and the legal system they administer. It is to say only that these burdens must be balanced against the harshness of involuntary dismissal of a litigant's case. Ofttimes the judicial process can be vindicated by sanctioning the blameworthy lawyer and not the innocent client. The problem is not whether there should be vindication, but how.

### III

Because I believe that the District Court's local rule is not entitled to any special significance in our review of the disposition of Lepkowski's case, I would resolve this facet of the appeal by resort to the principles articulated in the many decisions, in this circuit and elsewhere, dealing with involuntary dismissals for some lack in prosecution. Any canvass of these decisions—even a modest one—reveals the great reluctance of the courts to punish clients for their attorneys' misdeeds absent some paramount concern.

*Jackson v. Washington Monthly Co.*[56] spoke to the anomaly of "[d]ismissals for misconduct attributable to lawyers and in no wise to their clients[,] [which] invariably penalize the innocent and may let the guilty off scot-free."[57] There under review was a dismissal with prejudice based largely on the failure of the plaintiff's counsel to report on settlement progress as directed by the District Court. We recognized the central role of judicial discretion in decisions

51. *Cherry v. Brown-Frazier-Whitney, supra* note 49, 179 U.S.App.D.C. at 14, 548 F.2d at 969; *Sheaffer v. Warehouse Employees Union Local 730, supra* note 17, 132 U.S.App.D.C. at 403, 408 F.2d at 206; *Sandee Mfg. Co. v. Rohm & Haas Co.,* 298 F.2d 41, 43 (7th Cir.1962); *Navarro v. Chief of Police,* 523 F.2d 214, 217 (8th Cir.1975); *Davis v. Operation Amigo, Inc.,* 378 F.2d 101, 103 (10th Cir.1967).

52. Maj.Op. at 1313. I am mindful of the majority's concomitant theory that "this is not a case in which dismissal reflected an exercise of the court's inherent power to control its docket,.... [r]ather, a neutral rule of general application required a response to a motion within ten days." Maj.Op. at 1313 (citation omitted). I suggest, however, that the rule cannot be removed from the mainstream of involuntary dismissal for want of prosecution. It makes no difference whether authority to promulgate the rule is attributed to the court's inherent power or to the provisions of Fed.R.Civ.P. 41(b) since each summons an exercise of judicial discretion. The rule, to have any efficacy at all, cannot validly operate on less.

53. *Shea v. Donohoe Constr. Co., Inc., supra* note 4, at 1076.

54. *Id.* (emphasis in original).

55. *Id.*

56. 186 U.S.App.D.C. 288, 569 F.2d 119 (1977).

57. *Id.* at 292, 569 F.2d at 123.

on sanctions,[58] but warned that "a sound discretion hardly comprehends a pointless exaction of retribution." [59] We said that "[w]hen the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition." [60]

Our subsequent decisions have often reiterated these observations.[61] Even where we have affirmed dismissals, we have been solicitous of the client's welfare, insisting upon some fault of his own, some prejudice to his opponent, some threat to the efficiency of the judicial process or some need for deterrence of similar misbehavior in the future.[62] Other circuits are in harmony and have required similar demonstrations.[63] There is no reason for dishonoring these established principles here.

As just indicated, a point may be reached at which a party, though innocent of any personal fault, may be held bound by the misdoings of his attorney. *Link v. Wabash Railroad* [64] declared that, even when confronted by the prospect of a dismissal not of his own making, a litigant who has voluntarily chosen his counsel cannot "avoid the consequences of the acts or omissions of this freely selected agent." [65] *Link*, however, had been pending for more than six years [66] and involved a history of deliberate procrastination by the litigant's counsel.[67] The Court was careful to note that the dismissal had been predicated "on *all*" the circumstances that were brought to the judge's attention, including the earlier delays caused by counsel.[68] The Court specifically left undecided "whether unexplained absence from a pretrial conference would *alone* justify a dismissal with prejudice if the record showed no other evidence of dilatoriness on the part of the plaintiff." [69]

Certainly the performance of Lepkowski's counsel respecting an opposition to the Department's motion to dismiss is shocking, but that is not the end of the

---

**58.** *Id.*

**59.** *Id.*

**60.** *Id.* (footnote omitted). We added that "[p]ublic confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system; to laymen unfamiliar with the fundamentals of agency law, that can only convey the erroneous impression that lawyers protect other lawyers at the expense of everyone else." *Id.* at 292–93, 569 F.2d at 123–24.

**61.** See *Grochal v. Aeration Processes, Inc.*, 797 F.2d 1093, 1096–99 (D.C.Cir.1986); *Shea v. Donohoe Constr. Co., supra* note 4, at 1074–79; *Trakas v. Quality Brands Inc.*, 245 U.S.App.D.C. 165, 166–68, 759 F.2d 185, 186–88 (1985); *Camps v. C & P Tele. Co.*, 223 U.S.App.D.C. 396, 398–401, 692 F.2d 120, 122–25 (1981); *Butler v. Pearson*, 204 U.S.App.D.C. 254, 257–59, 636 F.2d 526, 529–31 (1980).

**62.** See, e.g., *Automated Datatron v. Woodcock*, 212 U.S.App.D.C. 284, 286, 659 F.2d 1168, 1170 (1981); *Cherry v. Brown-Frazier-Whitney, supra* note 49, 179 U.S.App.D.C. at 13–15, 548 F.2d at 968–70 (1976); *Sheaffer v. Warehouse Employees Union Local 730, supra* note 17, 132 U.S.App.

D.C. at 403, 408 F.2d at 206. See generally *Shea v. Donohoe Constr. Co., supra* note 4, at 1074–79.

**63.** See, e.g., *Fischer v. Buehl*, 450 F.2d 950, 951 (3d Cir.1971) (dismissal based on failure of plaintiff's attorney to appear at scheduled pretrial conference reversed as an abuse of discretion); *Bush v. United States Postal Serv.*, 496 F.2d 42, 43–45 (4th Cir.1974) (dismissal because of counsel's absence at hearing on defendant's motion to dismiss constituted, under the circumstances, an abuse of discretion); *Moreno v. Collins*, 362 F.2d 176, 178 (7th Cir.1966) (dismissal for counsel's failure to attend status call constituted an abuse of discretion).

**64.** *Supra* note 41.

**65.** 370 U.S. at 633–34, 82 S.Ct. at 1390, 8 L.Ed.2d at 740.

**66.** *Id.* at 628 n. 2, 633, 635, 82 S.Ct. at 1387 n. 2, 1390–91, 8 L.Ed.2d at 737 n. 2, 739–41.

**67.** *Id.* at 633–35, 82 S.Ct. at 1390–91, 8 L.Ed.2d at 739–41.

**68.** *Id.* at 634, 82 S.Ct. at 1391, 8 L.Ed.2d at 740 (emphasis in original) (footnote omitted).

**69.** *Id.* at 634, 82 S.Ct. at 1391, 8 L.Ed.2d at 740 (emphasis in original).

inquiry.[70] There remains the question whether, all circumstances considered, dismissal as the sanction was so severe as to venture beyond the limits of judicial discretion.

Approximately two months after Lepkowski's suit was filed, his adversaries moved to dismiss on the ground that it was barred by a statutory limitation. In contrast to *Link's* six-year history of procedural skirmishing,[71] Lepkowski's action was barely five months old when the District Court decreed its demise. Lepkowski's counsel caused at most a delay of three months, with no irremediable prejudice to his opponents. Nothing suggests that the failure to respond to the motion was deliberate rather than incredibly negligent, nor is there any indication that Lepkowski contributed to or knew—or even now knows—of his attorney's derelictions.

Since the District Court expressly based its dismissal solely on the concession the local rule purports to furnish, one cannot be sure about what other circumstances, if any, were taken into account when the ruling under review was made. But the total absence from the District Court's hearings of any mention of an available lesser sanction[72] renders highly improbable consideration of such an alternative as a means of vindicating the judicial system and deterring delinquence while preserving the claim of a guiltless litigant. Were this all to the case, I would vacate the order of dismissal and remand the case for reconsideration of a sanction appropriate under orthodox principles.

## IV

While I do not subscribe to the central theses advanced by my colleagues, I do join in affirmance of the dismissal of Lepkowski's suit for a different reason, and for that reason only. By my assessment, Lepkowski's claim has little or no chance of ultimately surviving the dismissal-motion's objection that it became time-barred before it was asserted in the District Court.[73]

---

**70.** The attack on the dismissal under scrutiny might superficially be viewed as one predicted procedurally on "excusable neglect" under Fed. R.Civ.P. 60(b)(1). Concededly, Lepkowski's counsel was negligent; under *Link,* that negligence is imputable to Lepkowski; and, on the record as it now stands, it was totally inexcusable. Nonetheless, it does not follow that Rule 60(b) is unavailable as the procedural vehicle for setting the dismissal aside. Indeed, the *Link* Court itself left open the question whether denial of a Rule 60(b) motion accompanied by a more adequate explanation for the absence of *Link's* attorney from the pretrial conference would have constituted an abuse of discretion. *Link v. Wabash R.R., supra* note 41, 370 U.S. at 635–36, 82 S.Ct. at 1391, 8 L.Ed.2d at 741.

In my view, Rule 60(b)(1) need not be considered at all. Rule 60(b)(6), authorizing relief from the operation of a judgment or order for any "other reason justifying [it]," "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266, 277, *modified in another respect,* 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099 (1949). We have heretofore held that Rule 60(b)(6) is applicable when counsel has been grossly negligent and has misled the client on that score. *Jackson v. Washington Monthly Co., supra* note 56, 186 U.S.App.D.C. at 291–92, 569 F.2d at 122–23; *L.P. Steuart, Inc. v. Matthews,* 117

U.S.App.D.C. 279, 280–81, 329 F.2d 234, 235–36 (1964). The mutual exclusivity of Rules 60(b)(1) and (6) does not affect a situation of that kind since more than neglect of counsel is involved. I cannot meaningfully distinguish a situation in which gross neglect of counsel is coupled with complete ignorance thereof by a client who is kept totally in the dark and has no reason to inquire or suspect. In each instance, there is a highly unusual turn of events which the client cannot reasonably be expected to have anticipated and from which he is powerless to protect himself. See *United States v. Cirami,* 563 F.2d 26, 35 (2d Cir.1977); *Boughner v. Secretary of HEW, supra* note 31, 572 F.2d at 978.

**71.** *Link v. Wabash R.R., supra* note 41, 370 U.S. at 628 n. 2, 82 S.Ct. at 1387 n. 2, 8 L.Ed.2d at 737 n. 2.

**72.** See Transcripts of Proceedings Before the District Court, *Lepkowski v. Department of Treasury,* Civ. No. 84–2964 (D.D.C.) (on motion to dismiss) (Feb. 20, 1985), Appellant's Appendix (A. App.) 27; (on motion to reconsider) (June 28, 1985), Supplemental Appendix (S. App.) 1.

**73.** The majority opinion likewise mentions this consideration as ground for affirmance of the dismissal. Maj.Op. at 1317. Apparently the majority also deems it a self-sufficient alternative basis for affirmance.

Lepkowski is a former employee of the Internal Revenue Service (IRS). He was discharged, seemingly in 1982 on grounds of misconduct, and litigation seeking his reinstatement has gone for naught.[74] His complaint in the instant case alleges that pursuant to his written request on August 23, 1982, he was allowed to examine the report of an IRS investigation of his on-the-job behavior, and thereupon learned that photographs and related workpapers were missing therefrom.[75] The complaint further avers that by letter dated September 14, 1982, IRS for the first time informed him that the missing items had been destroyed.[76] The record discloses that on September 24, 1984, Lepkowski filed in the District Court his complaint[77] maintaining that destruction of these parts of the investigative file defied the command of the Privacy Act of 1974[78] that each covered agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."[79] The Act confers upon an affected individual a right of action for failure to observe this requirement,[80] and Lepkow-

ski's complaint sought injunctive relief and damages.[81]

A motion to dismiss challenged Lepkowski's action as untimely under the terms of the Act.[82] If that position is correct, disposition of the case is removed from the ambit of judicial discretion into an area in which the legislature has already expressed its will. I think Lepkowski's showing is far too meager to establish that he has any meritorious defense to the motion.

Any supplication for relief from a judgment, much like a motion to dismiss for want of prosecution, calls for a sound exercise of discretion.[83] Courts thus have demanded, as a precondition to relief of that nature, demonstration of a good claim or defense in order to avoid needless protraction of the litigation.[84] Not only must a petitioner for review under Rule 60(b) meet the strictures set forth in that rule; he must also show that his position in the underlying contest is meritorious.

The Privacy Act specifies, with an exception plainly inapposite here, that an action to enforce any liability created thereunder must be brought "within two years from the date on which the cause of action arises...."[85] Lepkowski's cause of action accrued no later than the date upon which

**74.** Brief for Appellant at 1; Brief for Appellees at 2 n. 2.

**75.** Complaint, *Lepkowski v. United States Dep't of Treasury*, Civ. No. 84–2964 (D.D.C.) (filed Sept. 24, 1984), ¶ 7, A. App. 4 [hereinafter cited as Complaint].

**76.** Complaint, *supra* note 75, ¶ 8, A. App. 4.

**77.** Docket, *Lepkowski v. United States Dep't of Treasury*, Civ. No. 84–2964 (D.D.C.) at 1, S. App. 2.

**78.** 5 U.S.C. § 552a (1982).

**79.** *Id.* § 552a(e)(5). See also *id.* § 552a(e)(6).

**80.** *Id.* § 552a(g)(1)(C).

**81.** Complaint, *supra* note 75, at 5 (prayer for relief), A. App. 6.

**82.** Motion to Dismiss, *Lepkowski v. United States Dep't of Treasury*, Civ. No. 84–2964 (D.D.C.) (filed Nov. 30, 1984) at 1, A. App. 8.

**83.** *Washington Mobilization Comm. v. Jefferson*, 199 U.S.App.D.C. 266, 268, 617 F.2d 848, 850 (1980); *Bibeau v. Northeast Airlines, Inc., supra* note 12, 139 U.S.App.D.C. at 29, 429 F.2d at 213 (1970); *Benn v. Sankin*, 133 U.S.App.D.C. 361, 362, 410 F.2d 1060, 1061 (1969), *cert. denied*, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970); *Von der Heydt v. Kennedy*, 112 U.S.App.D.C. 78, 82, 299 F.2d 459, 463, *cert. denied*, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962).

**84.** *Universal Film Exchanges v. Lust*, 479 F.2d 573, 576 (4th Cir.1973); *United States v. One 1978 Piper Navajo PA–31 Aircraft*, 748 F.2d 316, 319 (5th Cir.1984); *Beshear v. Weinzapfel*, 474 F.2d 127, 132 (7th Cir.1973); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970).

**85.** 5 U.S.C. § 552a(g)(5) (1982). See *Bergman v. United States*, 751 F.2d 314, 316–17 (10th Cir. 1984), *cert. denied*, — U.S. —, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). The exception extends the period in situations of material and willful misrepresentation of mandatorily-disclosable information. There is no hint of any willful misrepresentation here.

he received IRS' letter of September 14, 1982, apprising him of destruction of the photographs and associated workpapers. As has been noted, however, Lepkowski's suit was not filed until two years and ten days after the date of that letter. As to this, the most that has ever been offered in Lepkowski's behalf is the argument that a September 14 mailing of the letter[86] does not establish that it was received prior to September 24.[87] Well-settled principles constrain me to disagree.

Deposits of properly-addressed postage-prepaid matter in the mail are presumed to have been delivered to the addressee,[88] and to have reached him in due course of the mail.[89] That governmental mail posted in the District of Columbia is regularly deliv-

ered in Milwaukee, Wisconsin, within nine days or less is a fact hardly open to dispute.[90] Moreover, it is firmly established that failure of a party to bring forth evidence within his control warrants an inference that the evidence is unfavorable to his cause.[91] Only Lepkowski could know positively just when the letter arrived, and if indeed it did so more than nine days after mailing, it was easy enough for his counsel to have said so.

---

**86.** That the September 14 letter was mailed on that date has nowhere been contested.

**87.** See, among the District Court filings, Memorandum in Opposition to Motion to Dismiss (never filed) at 3, A. App. 25; Reply in Support of Motion to Reconsider (filed May 13, 1985) at 3–4, A. App. 56–57; and, in this court, Brief for Appellant at 13–14; Reply Brief for Appellant at 6–10.

**88.** *Legille v. Dann,* 178 U.S.App.D.C. 78, 81, 82 & n. 20–21, 544 F.2d 1, 4, 5 & n. 20–21 (1976).

**89.** *Id.* at 82 & n. 22, 544 F.2d at 5 & n. 22.

**90.** See Fed.R.Evid. 201(b). See also *John W. Johnson, Inc. v. Basic Constr. Co.,* 139 U.S.App.

D.C. 85, 94 n. 20, 429 F.2d 764, 773 n. 20 (1970). While the mail may have become somewhat slower in more recent years, the time elapsing from posting to delivery between the two points mentioned would not approach ten days.

**91.** *Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610, 620 (1939); *Alabama Power Co. v. FPC,* 167 U.S.App.D.C. 145, 153 n. 14, 511 F.2d 383, 391 n. 14 (1974); *UMW v. NLRB,* 148 U.S.App.D.C. 305, 312, 459 F.2d 1329, 1336 (1972); *Tendler v. Jaffe,* 92 U.S.App.D.C. 2, 7, 203 F.2d 14, 19, *cert. denied,* 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344 (1953).